IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 1:21-cr-73 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | **ORDER DENYING MOTION FOR** |
| OLIVER LUCIAN GARR, | : | **COMPASSIONATE RELEASE** |
| | : | |
| Defendant. | : | |
| | : | |

This matter is before the Court on Defendant Oliver Lucian Garr's *Pro Se* Motion for Compassionate Release. (Doc. 249.) The Government opposes Garr's Motion, to which he has replied. (Docs. 269, 274.) For the reasons that follow, Garr's Motion will be **DENIED**.

I.   BACKGROUND

   A.   Garr's Offense and Conviction

On November 3, 2021, Oliver Lucian Garr was indicted in a multi-count drug trafficking conspiracy for narcotics conspiracy along with several other Defendants. (Doc. 54.) The Government filed a Second Superseding Indictment adding an additional Defendant on January 27, 2022. (Doc. 92.) On October 4, 2022, Garr waived Indictment and pled guilty to conspiring to commit money laundering. (Doc. 145.) Specifically, pursuant to the Statement of Facts to which he admitted, Garr met with an individual in Cincinnati and gave him $100,000 in drug proceeds to launder. (*Id*. at PageID 578.) Garr admitted that between August 12, 2020 and June 3, 2021, he conspired with a co-Defendant and others to knowingly conduct financial transactions involving the proceeds of distribution of controlled substances, including cocaine, in the Southern District of Ohio and elsewhere, with the intent of carrying on that unlawful activity. (*Id*.)

On April 16, 2024, the Court sentenced Garr to 100 months of imprisonment followed by a three-year term of supervised release and payment of a $100 special assessment. (Doc. 229.) The Court applied a downward variance due to Garr's good works in the community at the time of sentencing, imposing a sentence below his United States Sentencing Guideline range of 121 to 151 months of imprisonment. Garr is incarcerated at FCI Ashland and has a projected release date of March 18, 2031. *See* Federal BOP, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last viewed May 20, 2025).

Garr now moves for compassionate release (Doc. 249), to which the Government has responded in opposition (Doc. 269) and Garr replied (Doc. 274). For the reasons that follow, Garr's Motion will be **DENIED**.

II. **STANDARD OF LAW**

The Court lacks authority to resentence a defendant, except as permitted by statute. *United States v. Houston*, 529 F.3d 743, 748–749 (6th Cir. 2008). Garr seeks compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Section 3582(c) provides as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c).

Assuming that the inmate has exhausted administrative remedies, the district court must (1) determine whether "extraordinary and compelling reasons" warrant a reduction, (2) ensure that the reduction is consistent with the applicable policy statements by the United States Sentencing Commission in U.S.S.G. § 1B1.13, and (3) weigh the relevant sentencing factors listed in 18 U.S.C. § 3553(a). *United States v. Bricker*, 135 F. 4th 427, 433 (6th Cir. April 22, 2025) (citing § 3582(c)(1)(A)(i)); *see also United States v. McCall*, 56 F.4th 1048, 1054 (6th Cir. 2022).[1] "Congress did not define what constitutes an 'extraordinary and compelling reason,' except to state that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.'" *United States v. Hunter*, 12 F.4th 555, 561 (6th Cir. 2021) (quoting 28 U.S.C. § 994(t)), *cert. denied*, 142 S. Ct. 2771 (2022)).

The § 3553 factors referenced in the statute include (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need for the sentence imposed to reflect the seriousness of the offense; (3) the need to protect the public from further crimes of the defendant; (4) the sentencing guideline range; and (5) the need to avoid unwarranted sentence disparities among defendants with similar records guilty of similar conduct. 18 U.S.C. § 3553. These factors implicitly allow the Court to consider the amount of time served when determining if a reduction in sentence is appropriate. *See United States v. Kincaid*, 802 F. App'x 187, 188 (6th Cir. 2020). Also, district courts can consider the nonretroactive changes in law relevant to

---

[1] The Sixth Circuit previously determined that the only United States Sentencing Commission policy statement potentially applicable to motions for compassionate release—U.S.S.G. § 1B1.13—was inapplicable to cases filed by federal inmates. *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020). Therefore, the district court had full discretion to define "extraordinary and compelling reasons" without reference to the policy statement in § 1B1.13. *Id.*; *United States v. Elias*, 984 F.3d 516, 519–520 (6th Cir. 2021). However, the United States Sentencing Commission amended U.S.S.G. § 1B1.13 effective November 1, 2023 and made clear that the policy statement applies to motions filed by inmates. U.S.S.G. § 1B1.13(a).

3

sentencing as part of its weighing of the § 3553(a) sentencing factors.  *See Hunter*, 12 F.4th at 568–569.  District courts are encouraged to be "explicit and particular with their factual reasoning" when they consider the § 3553(a) factors.  *Jones*, 980 F.3d at 1113.

### III.    ANALYSIS

#### A.  No Extraordinary and Compelling Reason for Release[2]

Garr seeks compassionate release on the basis of his sister's medical condition and his post-sentencing rehabilitation.  Pursuant to U.S.S.G. § 1B1.13(b)(3), the Court may find an extraordinary and compelling reason for a defendant's compassionate release exists based upon the family circumstances of the defendant.  These circumstances are:

> (A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
> (C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.
> (D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, 'immediate family member' refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

U.S.S.G. § 1B1.13(b)(3)(A)–(D).  Garr asserts that section (D) is applicable here based on the illness of his sister, Angelita Garr.  Garr asserts that Angelita recently underwent surgery for two malignant brain tumors, resulting in the loss of her eye and memory.

---

[2] In a prior Court filing, Garr attached what appears to be a TRULINCS email dated October 1, 2024 from Garr to the Warden of his prison seeking compassionate release on the basis of the incapacitation of his sister and probability of having to care for her son who suffers from mental illness. (Doc. 240 at PageID 1781.)  The Court will construe this as Garr having exhausted his administrative remedies.

(Doc. 249 at PageID 1849.) He asserts that Angelita is incapacitated and unable to care for herself or her son, who is developmentally delayed and has a history of violence and auditory hallucinations and mood changes. (*Id*.)

Garr has not provided medical records demonstrating that Angelita is incapacitated. For instance, Garr attached to his Motion Angelita's "Brain Tumor Visit" summary conducted by Dr. Yair Gozal on October 28, 2024 at Mayfield Clinic after her surgery.[3] (Doc. 249-1 at PageID 1853.) Dr. Gozal described Angelita as "well-appearing, pleasant, and in no acute distress [. . . ] alert and oriented." (*Id*.) Dr. Gozal notes that Angelita has "complete left-sided ptosis with deviation of the eye at rest" and has "complete 3rd nerve palsy with only residual abduction capacity." (*Id.*) He also observed that she walks with a correlated gait. (*Id.*) The report does not support the conclusion that Angelita is incapacitated after her surgery. Rather, it appears she is managing in spite of her health conditions.

In addition, Garr has not demonstrated that he is the only available caregiver for Angelita and/or her son. As the Government points out, at the time of his sentencing, Garr had extensive family in the Cincinnati area. Further, Garr indicated that both he and his wife would reside together if he was released to care for his sister. That Garr's wife is available to live with him and his sister suggests that she is an available caregiver. (*See* Doc. 240 at PageID 1781.)

For these reasons, Garr has failed to establish an extraordinary and compelling reason for his release.

**B. Sentencing Factors Do Not Support Release**

Regardless, however, Garr was recently sentenced by this Court and his early release would run contrary to the § 3553(a) sentencing factors, which were recently, and extensively,

---

[3] The document print is cut-off on the side, so the Court is only able to read a portion of the document and does its best to decipher.

evaluated by the Undersigned. Among the factors to be considered are the nature and characteristics of the offense; his criminal history; the need for the sentence imposed to reflect the seriousness of his conduct; the need to protect the public; the Guidelines range; and the need to avoid unwarranted sentencing disparities. Nothing that has been presented changes this Court's determination that the sentencing factors favor a 100-month term of imprisonment served to completion.

As was discussed at his sentencing, Garr's criminal conduct was incredibly serious. He was identified as a customer, money launderer, and drug distributor for a Drug Trafficking Organization ("DTO"). He worked with individuals known to law enforcement who coordinated bulk cash pickup contracts from Mexico, specifically for the purpose of laundering drug proceeds. On August 12, 2020, Garr met with a Confidential Source ("CS") and provided the CS with $100,000 in drug proceeds to be laundered. Garr also utilized several residences to store drugs and drug trafficking proceeds, and he was responsible for at least 14.38 kilograms of cocaine and the use of a stash house. Thus, the nature of Garr's offense is serious, as is the need to protect the public from drug trafficking and its related crimes.

Aside from his criminal conduct, there is another side to Garr, for which the Court determined a downward variance was appropriate. He was a businessman who mentored young adults and volunteered in the community. His family described him as an active father and husband. Even though the Court sentenced Garr below his United States Sentencing Guideline range, and he has served only a fraction of his sentence to date because he was so recently sentenced by this Court. Garr also notes that he is working on his rehabilitation in prison and has completed programs and is a Veterans Support Group member. The Court commends Garr's productivity and rehabilitation efforts. However, his rehabilitation efforts do not change the

Court's analysis. Reducing Garr's sentence would create sentencing disparities and not reflect the Court's goal of deterrence.

The Court is concerned with deterrence of criminal drug trafficking organizations at all levels as DTOs rely upon individuals at the top, in the middle, and at the bottom of its operations. This case involved a very complex and large-scale DTO, and Garr was important to Cincinnati-area operations. Although his Garr was not at the top of the DTO in this case, his role was not insignificant. His sentence, therefore, does and must reflect the important goal of deterrence.

In sum, the § 3553(a) sentencing factors continue to support the sentence Garr was given at the time of sentencing. That sentence was carefully and thoughtfully considered, and the Court's analysis has not changed.

### IV. CONCLUSION

For the reasons set forth within this Order, Garr's Motion for Compassionate Release (Doc. 249) is **DENIED**.

**IT IS SO ORDERED.**

S/Susan J. Dlott\
Judge Susan J. Dlott\
United States District Court